NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

In Re the Marriage of:

HASIB ZECIC, *Petitioner/Appellee*,

*v.*

SEIDA ZECIC, *Respondent/Appellant*.

No. 1 CA-CV 26-0043 FC

FILED 08-13-2026

Appeal from the Superior Court in Maricopa County
No. FN2023-091019
The Honorable Amanda M. Parker, Judge

**AFFIRMED IN PART; VACATED AND REMANDED IN PART**

COUNSEL

Blake & Pulsifer PLC, Tempe
By Louis K. Lombardo
*Counsel for Petitioner/Appellee*

Berkshire Law Office PLLC, Tempe
By Keith Berkshire, Alexandra Sandlin
*Counsel for Respondent/Appellant*

---

**MEMORANDUM DECISION**

---

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Michael J. Brown joined.

---

**P A T O N**, Judge:

¶1        Seida Zecic ("Wife") appeals from the superior court's dissolution decree. For the following reasons, we affirm in part, vacate in part, and remand for further proceedings consistent with this decision.

**FACTS AND PROCEDURAL HISTORY**

¶2        Wife and Hasib Zecic ("Husband") married in 2015. Before marrying Husband, Wife owned and operated a restaurant called Old Town Sarajevo ("OTS"). During the marriage, both parties worked at OTS. Although OTS was Wife's separate property, Husband claimed he was entitled to a share of the restaurant's increase in value during the marriage because their community efforts grew the business and paid off its debts.

¶3        In 2017, the parties bought the marital residence, but OTS was on the title as the owner because neither party had good credit. The residence was originally financed through a "hard money loan" to OTS and a $100,000 down payment. The parties disputed the source of the $100,000 down payment. Husband claimed it was from the parties' community savings account. Wife, however, testified that she contributed $70,000 from money she inherited when her father passed away and her savings. In 2018, OTS (acting through Wife) signed a quitclaim deed conveying the residence to Wife as "a married woman[.]" Both Husband and Wife signed as guarantors on the deed of trust for a traditional mortgage.

¶4        There was a fire at OTS during the marriage, resulting in property damage. The parties filed an insurance claim, and Wife received an $81,000 insurance payment in May 2023 but did not share any of the funds with Husband. He claimed entitlement to half, or, alternatively, payment for the repairs he performed. Wife disputed this, claiming she hired contractors to repair the damage to OTS.

¶5        At trial, Wife alleged that Husband committed waste by withdrawing over $7,000 from a joint checking account shortly before he filed for divorce. She also claimed that he wasted over $20,000 by sending

money to his adult children and allowing them to use a community credit card. Husband contends, without support from the record, that he supported his children throughout the marriage with Wife's knowledge and consent. According to Husband, this was not an abnormal or excessive expense.

¶6 Following a trial, the superior court made the following rulings relevant to this appeal. It found Husband failed to show that OTS increased in value or that the community was undercompensated during the marriage. As a result, it awarded OTS to Wife as her separate property with no offset or equitable lien to the community. The court found the marital residence was community property and ordered it sold, with the proceeds to be divided equally. The court rejected Wife's claim that Husband's withdrawal of over $7,000 and the funds spent on his children constituted waste. The court ordered Wife to pay Husband for half of the OTS insurance proceeds. Finally, the court declined to award fees to either party, finding no financial disparity and that both parties acted unreasonably.

¶7 Both parties moved to alter or amend the decree. The superior court granted Wife's motion in part, vacating its order that Wife pay Husband half the OTS proceeds. Wife timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Section 12-2101(A)(1).

## DISCUSSION

### I. The superior court did not err in characterizing the marital residence as community property.

¶8 Wife argues the superior court erred in characterizing the marital residence as community property because her separate property business purchased it. We review the superior court's allocation of community property for an abuse of discretion, but the classification of property as separate or community is a question of law that we review de novo. *Bell-Kilbourn v. Bell-Kilbourn*, 216 Ariz. 521, 523, ¶ 4 (App. 2007). We view the evidence in a light most favorable to upholding the decree. *Thomas v. Thomas*, 142 Ariz. 386, 390 (App. 1984).

¶9 Property acquired during marriage is presumed to be community property. A.R.S. § 25-211(A). "[T]he spouse seeking to overcome the presumption has the burden of establishing the separate character of the property by clear and convincing evidence." *Schickner v.*

*Schickner*, 237 Ariz. 194, 199, ¶ 22 (App. 2015). The court found Wife did not rebut the presumption.

¶10 Wife contends the presumption does not apply because OTS purchased the house. Wife reasons that because her separate property business bought the house, it remained the separate property of OTS, and its character did not change even if community funds were used to pay for it. *See* A.R.S. § 25-213(A) ("the increase, rents, issues and profits" of a spouse's separate property remain separate property). But spouses can transmute their separate property to community property. *Moser v. Moser*, 117 Ariz. 312, 314 (App. 1977). "Even in the absence of an explicit agreement, written or oral, a court may find a transmutation of property if the circumstances clearly demonstrate that one spouse intended to effect a change in the status of [her] property." *Id.*

¶11 Wife, as the owner of OTS, deeded the marital residence to herself, as "a married woman" during the marriage. Although OTS first acquired the residence, OTS later transferred the residence *to Wife* during the marriage, giving rise to a presumption of community property. *See* A.R.S. § 25-211(A). Indeed, the presumption that property acquired during the marriage by either spouse is community property applies "irrespective of which spouse holds legal title." *Ariz. Cent. Credit Union v. Holden*, 6 Ariz. App. 310, 313 (1967). In *Holden*, the wife quitclaimed her separate property land to her husband. *Id.* at 312-13. The quitclaim deed did not specify that the husband would take the land as his separate property. *Id.* at 313. This court held that it was therefore community property. *Id.*

¶12 Other evidence also shows that Wife intended to transmute the marital residence to community property. Wife took title as "a married woman" instead of as her sole and separate property, which implies that she intended it to be community property. Further, the deed of trust accompanying the refinance named both Husband and Wife as owners and grantors, and both signed the deed of trust. And Husband never signed a disclaimer deed to the marital residence. As we held in *Bell-Kilbourn*, 216 Ariz. at 524, ¶¶ 9-10, a valid disclaimer deed sufficiently rebuts the presumption that real property acquired during the marriage is community property. In the absence of a disclaimer deed, the community property presumption applies here because Wife acquired the marital residence from OTS during the marriage.

¶13 Wife argues that the transfer of title to Wife "as a married woman" did not transmute the residence to community property. She contends that because OTS deeded the property to Wife as a married

woman and not to the community, this case is unlike *In re Marriage of Berger*, 140 Ariz. 156 (App. 1983), and *Toth v. Toth*, 190 Ariz. 218 (1997). In those cases, the courts found the spouses intended to gift their separate property residences to the community by transferring the title to the *community*. *Toth*, 190 Ariz. at 220; *Berger*, 140 Ariz. at 161. We are unpersuaded by the distinction Wife urges. Here, the transfer to "Wife as a married woman" similarly transmuted the residence to community property. *See Holden*, 6 Ariz. App. at 313.

¶14 Alternatively, Wife argues that because the house was purchased with funds from her separate property business, the superior court erred by not first allocating the funds used to buy the house between her separate property and community property. Wife relies on the rule that the community is only entitled to a share of the increase in value of her separate property business and a share of its profits if Husband shows that the value of the separate property business increased during the marriage. *See Rueschenberg v. Rueschenberg*, 219 Ariz. 249, 254, ¶ 20 (App. 2008). Husband proved no such increase in OTS. As a result, Wife argues, Husband failed to show that the $100,000 down payment came from exclusively community funds. She claims that the court must first determine how much of the down payment was her separate property before determining the character of the marital residence.

¶15 We disagree. As noted above, even if we presume for this appeal that the funds were Wife's separate property, OTS later transferred ownership to Wife as a married woman. Thus, it transmuted the separate property to community property. *See supra* ¶ 11. Given this, the court did not have to determine the character of the funds used to purchase the property. The transfer of title transmuted the property to community property.

¶16 For this reason, this case includes a key factual difference from *Kim v. Pak*, 258 Ariz. 594 (App. 2024), cited by Wife. In *Kim*, 258 Ariz. at 596, ¶ 3, there was no subsequent transfer of ownership to one spouse as a married person; Husband's separate property business always owned the property. *Kim* would control if Wife had not transferred the title to the community. *See id.*

¶17 The transfer from OTS to Wife as a married woman transmuted Wife's separate property to community property. We discern no error.

## II.    The superior court erred in denying Wife's claim for waste based on Husband's $7,480 withdrawal.

¶18        Wife argues the superior court abused its discretion in finding that she did not show that Husband's withdrawal of $7,480 from a joint account less than two months before filing for divorce constituted waste. We review the superior court's determination of whether there is evidence of a prima facie case under an abuse of discretion standard. *Kline v. Kline*, 221 Ariz. 564, 573, ¶ 35 (App. 2009).

¶19        The court is authorized to consider any excessive or abnormal expenditures, destruction, concealment, or fraudulent disposition of community property when determining the equitable division of property. A.R.S. § 25-318(C).  The party alleging marital waste has the burden of making a prima facie showing of waste. *Gutierrez v. Gutierrez*, 193 Ariz. 343, 346, ¶ 7 (App. 1998).  "It is then the burden of the spending spouse to go forward with evidence to rebut the showing of waste because all of the evidence relative to the expenditures is generally within the knowledge, possession, and control of the spending spouse." *Id.* at 346-47, ¶ 7.  A prima facie case requires some evidence to support a rational inference that the allegation is true. *See  Kline*, 221 Ariz. at 573, ¶ 35 (App. 2009); *see also Mahan v. First Nat'l Bank of Ariz.*, 139 Ariz. 138, 142, n.3 (App. 1984) ("A prima facie case requires that there be evidence to justify, not necessarily compel, an inference[.]").

¶20        Wife provided evidence that Husband withdrew $7,000 in one transaction from the parties' joint account (BMO x9473) on February 3, 2023.  On the same day, he deposited $7,000 into his separate checking account (BMO x2236).  He also withdrew $480 on February 3, 2023, from the joint account (BMO x9473) but there is no corresponding deposit into his separate checking or any other account.  Husband made these withdrawals less than two months before he filed the petition for dissolution.  The $7,000 withdrawal was also unusually large compared to the other transactions.

¶21        Contrary to Husband's assertion, the bank records support Wife's testimony.  These facts support an inference of waste. *See Goodell v. Goodell*, 257 Ariz. 563, 571, ¶ 36 (App. 2024) (holding that the timing of the alleged waste is a relevant consideration); *see also West v. West*, 1 CA-CV 25-0609 FC, 2026 WL 1257316, at *3, ¶ 17 (Ariz. App. May 7, 2026) (mem. decision) (finding that the wife met her prima facie burden with evidence of large withdrawals not directly traced to a community expense and a deposit into a separate account to which the wife had no access).

¶22 The superior court found that Wife did not meet her burden because she failed to show how much was in the joint BMO account on the date of service. We infer that meant Wife failed to show that Husband never repaid the funds. But this improperly shifted the burden. Wife met her prima facie burden by showing the large transfer of community funds to Husband's separate account shortly before he filed the dissolution petition. The burden then shifted to Husband to explain how he spent these funds or if he repaid them. *Gutierrez*, 193 Ariz. at 346-47, ¶ 7.

¶23 Husband did not show how these withdrawals benefited the community. *See Goodell*, 257 Ariz. at 571-72, ¶ 36 (holding that pre-petition conduct must affirmatively benefit the community). In fact, he failed to address either withdrawal at trial. Thus, Wife met her burden of establishing a prima facie case, and Husband did not rebut it.

¶24 On appeal, Husband argues that Wife knew that he withdrew funds to give to his adult children which was a common expenditure in their marriage. Husband conflates Wife's two different waste arguments. Wife's pretrial statement listed several specific transfers to his adult children and credit card charges by his adult children as waste. But Wife also argued that the court should account for the $7,480 withdrawal from the BMO account in allocating community assets. Thus, Wife's testimony about credit card charges and Western Union transfers did not apply to the $7,480 withdrawal from the joint BMO account.

¶25 We vacate the order denying Wife's claim for waste based on Husband's withdrawals of $7,480 from the joint BMO account. On remand, the court shall allocate those funds equitably.

**III. The superior court erred in finding Wife unreasonably failed to disclose the insurance payment to OTS, which tainted its attorneys' fees consideration.**

¶26 Wife argues the superior court erred in denying her request for attorneys' fees based on erroneous unreasonableness findings. We review the decision on a request for attorneys' fees for an abuse of discretion. *Myrick v. Maloney*, 235 Ariz. 491, 494, ¶ 6 (App. 2014). In determining whether to award attorneys' fees, the court must consider "the financial resources of both parties and the reasonableness of the positions each party has taken throughout the proceedings." A.R.S. § 25-324(A). Courts evaluate the reasonableness of a party's legal position using an objective standard. *In re Marriage of Williams*, 219 Ariz. 546, 548, ¶ 10 (App. 2008).

¶27 The superior court denied Wife's request for attorneys' fees, finding no financial disparity and that both parties acted unreasonably. Specifically, the court found Wife was unreasonable in (1) refusing to participate in meaningful settlement negotiations until the day of trial, which "was designed to delay these proceedings further[,]" (2) failing to disclose that she received an $80,000 insurance payment related to OTS, and (3) failing to disclose that she sold OTS.

¶28 Wife challenges the findings that she unreasonably failed to inform Husband of the sale or the insurance payment. The record shows that Wife entered a contract to sell OTS for $200,000. The buyer made an $80,000 down payment in October 2024, but when he tried to cancel the contract and get his money back, Wife refused. At the time of trial, this dispute had not been resolved.

¶29 In addressing the value of OTS, the superior court noted that "it is unclear from the record whether Wife has sold the restaurant." Yet in awarding attorneys' fees to Husband, the court found that Wife's failure to disclose this transaction was unreasonable. These findings are inconsistent. Although the value of OTS was a relevant issue at trial because Husband asserted, albeit unsuccessfully, an interest in OTS, the fee award is based on Wife's failure to disclose a sale that did not occur. Without more findings, it is unclear how this was unreasonable.

¶30 Next, during the marriage, Wife filed an insurance claim for property damage at OTS, resulting in an $81,000 insurance payment. Wife argues that OTS was undisputedly her separate property, so Husband was not entitled to any of the insurance payment. In fact, the court granted Wife's motion to alter the decree as to the insurance payment. The court found that the insurance proceeds belonged to OTS, which was Wife's separate property, and Husband failed to show that he had any interest in the increased value of OTS. It is also unclear how the court determined that Wife failed to timely disclose the insurance payment when Husband's pretrial statement and the business valuation—prepared over six months before trial—addressed the insurance payment. The record does not support the finding that Wife unreasonably failed to disclose this payment.

¶31 Husband argues that we may affirm the fee award if Wife was unreasonable for any reason given by the superior court. To be sure, Wife does not challenge the finding that she unreasonably refused to participate in pretrial settlement negotiations until the day of trial, which the court found was a delay tactic. But the record does not support all of the court's unreasonableness findings. Because we do not know how much weight the

court attributed to each finding, we must vacate the fee award and remand for reconsideration.

**¶32** Both parties request an award of attorneys' fees on appeal under Section 25-324. After considering the financial resources and the reasonableness of the parties' positions, we decline to award fees to either party. Wife, however, is entitled to recover her costs on appeal under Section 12-342(A) upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶33** We affirm the finding that the marital residence is community property. We vacate the denial of Wife's waste claim and remand for the court to equitably allocate the $7,480 Husband withdrew from the parties' joint bank account. We vacate and remand for reconsideration of Wife's request for attorneys' fees.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR